The Investment Company of Philadelphia v G. Morgan Eldridge, Appellant.

175    287
29 SC  631

[Marked to be reported.]

*Corporations—Declarations of president—Promissory notes.*

A corporation advanced money to the defendant to purchase stock of the corporation. The defendant gave his promissory note to the corporation and assigned his stock as collateral security therefor. The note was renewed from time to time, and finally suit was brought against the defendant by the corporation on the last renewal note. The defendant offered testimony to show that the president of the corporation, at various times after the date of the original note, had given to the defendant false information as to the real condition of the company's affairs. *Held,* (1) that the testimony was properly rejected, as the president had no right to bind the company by any such declarations, as they were outside the line of his duty; (2) that the claim of the defendant that he might or would have sold his stock at a price sufficient to protect himself if he had had proper information was imaginary and speculative.

Argued Jan. 24, 1896. Appeal, No. 80, July T., 1895, by defendant, from judgment of C. P. No. 4, Philadelphia County, June T., 1892, No. 421, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit on promissory notes. Before WILLSON, J.

At the trial it appeared that in 1887 the plaintiff advanced money to the defendant to purchase a large number of shares of the stock of the plaintiff. The defendant gave his promissory notes to the corporation, and assigned his stock as collat-

eral security for the payment of the notes. There were various renewals of the notes and finally suit was brought on the last renewal notes. Counsel for the plaintiff offered to show that the notes sued on were given in place of others then falling due ; that the defendant called at the office of the corporation plaintiff with a view of liquidating his debt, with the value of stock as it then existed; that he had a conversation with the president of the corporation, who assured him that the then market value of the stock was below its intrinsic value ; that the capital of the company was unimpaired, and that the report of surplus earnings on which they had just declared a dividend was entirely accurate ; that by virtue of those representations, the present notes were given ; to be followed by evidence that at the time these statements were made the capital of the company was impaired over fifty per cent; that its stock was absolutely worthless, and that the company did not have at any time in the year in which these representations were made, or since, any surplus of undivided earnings. Objected to by plaintiff. Objection sustained. Exception. [1]

Verdict and judgment for plaintiff for $23,152.57. Defendant appealed.

*Error assigned* was (1) ruling on evidence as above, quoting the bill of exceptions.

*David W. Sellers, William S. Price* with him, for appellant.— The representations made by the president on which the appellant acted are as legally important as though he had issued a formal certificate to the verity of the facts : Willis v. Phila. & Darby R. R., 6 W. N. C. 461; Bank v. Kurtz, 99 Pa. 349 ; Wright's App., 99 Pa. 425; Mt. Holly Paper Co.'s App., 99 Pa. 513.

*John G. Johnson, Frank P. Prichard* with him, for appellee.— It was no part of the duty of the president of the Investment Company to give a debtor information as to the value of stock held as collateral.

Whatever was the value of the collateral, the defendant owed the debt and was bound to pay it. If he had been told that the collateral was less valuable, he would still have been obliged to pay the debt or to have renewed it.

OPINION BY MR. JUSTICE GREEN, May 4, 1896 :

The notes in suit were renewals of other notes given for money borrowed by the defendant from the plaintiff as far back as in November, 1887. The stock held by the plaintiff was transferred by the defendant to the plaintiff as collateral security for the loans and was so held continuously throughout the transaction. As a matter of course the defendant was a debtor to the plaintiff all the time, for the money thus borrowed, and was in duty bound to pay the debt. The purpose of the rejected offers of testimony was, necessarily, to establish a legal defense against the obligation to pay the debt. If it could not accomplish that purpose it was clearly inadmissible. The substance of the offers of testimony was that the president of the plaintiff company had given to the defendant at various times false information as to the real condition of the plaintiff's affairs, and the argument on behalf of the defendant is, that if true information had been given, he, the defendant, might or would have sold his stock at a price which would have been sufficient to pay off his debt. Apart from the consideration that the wrongdoing of the president in giving false information could not be visited upon the bank to deprive it of its right to recover the debt, it will be seen that the theory as to what the defendant would or might have done, if true information had been imparted, is entirely imaginary and speculative. There is no logical connection between the premise and the conclusion of the proposition. Some persons recuperate their losses in one way and some in other ways. While it is possible the defendant might have thought it good policy to dispose of his stock at the lower prices, it is just as possible that he might have thought it a better policy to buy large additional quantities of the stock at the lower prices, and hold them for a subsequent rise, thus making up his losses and even realizing a profit. Both these methods are of the commonest occurrence in the commercial world, and not even the defendant himself could know in advance which method he might subsequently adopt. But the law does not concern itself with such uncertain and speculative considerations in dealing with legal questions which have their origin in transactions of this character. It is enough to know that for the wrongful conduct of its president in giving untrue information in the manner proposed to be proved in this case,

it cannot be that the plaintiff must lose its debt. He had no right to bind the company by any such declarations, he was outside the line of his duty in giving false information, and such action on his part can only be regarded by the law as a transgression of duty and tortious in character. Of course if the debt itself had been created by the use of such means a very different question would have arisen, but this debt had already existed for several years and was owing in its entirety at the time of the alleged declarations without the slightest imputation as to the integrity of its creation. We are of opinion that the offers of testimony were properly rejected.

Judgment affirmed.